No. 12,930.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND *v.* HERSHEY.
(25 P. [2d] 178)

Decided September 5, 1933.   Rehearing denied September 25, 1933.
Second petition for rehearing denied October 16, 1933.

Mr. L. WARD BANNISTER, Mr. THOMAS A. MAPES, Mr.
SAMUEL M. JANUARY, for plaintiff in error.

Mr. James D. Parriott, Mr. Karl C. Brauns, Mr. L. E. F. Talkington, for defendant in error.

*In Department.*

Mr. Justice Bouck delivered the opinion of the court.

The plaintiff in error is a surety company which became surety on the official bond of the defendant in error Hershey, who as manager of safety and excise of the City and County of Denver was ex officio sheriff. The company had incurred expenses in defending an action brought against it in Oklahoma to recover damages because of an alleged false arrest made in that state. Claiming to proceed according to the terms of an indemnity agreement between them, the company sued Hershey for reimbursement of those expenses. Hershey and one of his deputies named Ryan had also been made defendants in the Oklahoma case, the arrest and imprisonment of the Oklahoma plaintiff having been effected by Ryan; but neither Hershey nor Ryan was served with summons of the Oklahoma court, nor did either enter his appearance therein. Due service had been had in Oklahoma on the company, which defended and obtained its own dismissal from the case. The company's aforesaid action against Hershey for reimbursement was in the district court of Denver. A jury having been waived, findings went against the company and a judgment of dismissal followed. The record is before us for review.

We need not inquire whether, if Ryan had made an unlawful arrest or perpetrated an unlawful imprisonment while purporting to act in his capacity as deputy of Sheriff Hershey, the latter would be liable to the company. For the purposes of our discussion we might assume that he would. If on the other hand Ryan was not acting in that capacity on the occasion in question, Hershey cannot be held.

It is conceded that at the time of the arrest and imprisonment complained of Ryan had been appointed as agent by the Governor of Colorado. Pursuant to the well-recognized procedure established and uniformly used for interstate rendition, or the surrender or so-called extradition—by one state to another—of persons charged with crime and arrested as fugitives from justice, the demanding state must appoint through its executive an agent who, armed with the governor's warrant, is to receive the alleged fugitive and return him to that state. It is probably true that more often than not a sheriff or a deputy sheriff is selected as such agent of the demanding state. This selection and the duties devolving upon the agent thereby, however, are wholly apart from the question whether he is or is not a sheriff or other regular peace officer, as such, or whether he is a mere private person. The statute of Colorado provides that the executive warrant shall be issued "to some messenger, commanding him to receive the said fugitive and convey him to the sheriff of the proper county where the offense was committed." C. L. '21, §7167. Compare U. S. Constitution, article IV, section II, subdivision 2. As ex officio sheriff of Denver, Hershey would have possessed no power whatever to make an arrest in Oklahoma. Had he attempted to do so, and been guilty of false arrest or false imprisonment, as would necessarily have been the case, the surety on his official bond could not have been subjected to liability for such unauthorized extrastate act. 46 C. J. 1068, §399. Nor can the surety hold Hershey liable for expenses incurred in the present case under the circumstances stated. Neither the official bond nor the indemnity agreement is broad or clear enough to cover either of the contingencies just mentioned. Ryan obviously acted altogether independently of his office as deputy sheriff, and beyond the territorial limits of his official status. His principal's official bond did not cover

Ryan's acts as agent of the state. And the indemnity agreement must be read in conjunction with the official bond and in the light of the attending circumstances. When an agreement or contract has been reduced to its final and complete expression in writing, it is sometimes so plain that construction in the strict sense is unnecessary. To reasonable interpretation, on the other hand, a written contract—even though it may not call for construction proper—is always subject. Such a contract is not inevitably read with sheer literalness. True, in the case at bar the provision of the indemnity agreement, if taken literally, is universal in its application: "Second, to indemnify the company against all loss, liability, costs, damages, attorneys' fees and expenses whatever, which the company may sustain or incur by reason of executing said bond, in making any investigation on account thereof, in prosecuting or defending any action which may be brought in connection therewith * * *." But the language is to be read in view of all the circumstances accompanying the transaction. 1 Contracts A. L. I., §235 (d). The writing is to be given such a meaning as would be attached to it "by a reasonably intelligent person * * * knowing all the circumstances prior to and contemporaneous with the making of the integration * * *." Id., §230. The official bond which led to the execution of the indemnity agreement had direct reference to official acts within the state of Colorado. It would not be reasonable to suppose that an action brought on that bond in a foreign state or country would be an action contemplated at the time the bond or the agreement was executed, where, as here, the act charged against the deputy bears no relation whatever to his principal, and has nothing to do with his rights and duties as that principal's deputy.

The courteous co-operation of the legal department of Denver with the company's counsel at Oklahoma City is

referred to, apparently as an argument in favor of imposing liability upon Hershey; but that fact cannot create a liability in Hershey where otherwise none exists. The lower court was right in entering findings and judgment for Hershey.

Judgment affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE BURKE and MR. JUSTICE HILLIARD concur.