BLINDER, ROBINSON & CO., INC., a Colorado corporation, Plaintiff-Appellant and Cross-Appellee,

v.

Lyle ALZADO, Defendant-Appellee, Cross-Appellant, and Third-Party Plaintiff-Appellee,

v.

Ronald KAUFFMAN and Arnold Tinter, Third-Party Defendants-Appellants.

No. 82CA1503.

Colorado Court of Appeals, Div. I.

July 3, 1985.

Rehearing Denied Aug. 29, 1985.

Certiorari Granted (Alzado) March 3, 1986.

Philip E. Lowery, P.C., Philip E. Lowery, Denver, for plaintiff-appellant and cross-appellee.

Davis, Graham & Stubbs, Charles L. Casteel, John F. Knoeckel, Denver, for defendant-appellee, cross-appellant, and third-party plaintiff-appellee.

Ronald Kauffman, pro se.

Breit, Best, Richman & Bosch, John L. Breit, Susan Smith Fisher, Denver, for third-party defendant-appellant Arnold Tinter.

VAN CISE, Judge.

This action arose as the aftermath to a 1979 exhibition boxing match between defendant, Lyle Alzado, a professional football player, and Muhammed Ali, the then heavyweight boxing champion. Following a jury trial, judgments were entered (1) against Alzado and in favor of plaintiff, Blinder, Robinson & Co., Inc. (Blinder-Robinson), on the complaint, (2) in favor of Alzado and against Blinder-Robinson on two counterclaims, (3) in favor of Alzado and against third-party defendant Ronald Kauffman on two third-party claims and third-party defendant Arnold Tinter on one third-party claim. All parties appeal. We affirm in part and reverse in part.

Alzado, together with his agent, Kauffman, and his accountant, Tinter, formed

Combat Promotions, Inc., to promote the bout. Muhammed Ali demanded a $250,-000 letter of credit to secure his compensation. In order to obtain this commitment and to bring to fruition the exhibition boxing match, Combat Associates, a limited partnership, was formed with Combat Promotions, Inc., as general partner and Blinder-Robinson as limited partner. The general partner's contribution was its assignment of all its contracts pertaining to the match; Blinder-Robinson's contribution was obtaining the letter of credit to deliver to Ali.

A separate agreement between Alzado and the limited partnership provided that Alzado would be paid $100,000 for engaging in the match, but also provided that Alzado's right to receive this money was subordinated to the payment of the expenses of the match and the reimbursement of Blinder-Robinson. Also, Alzado, by a written guaranty agreement, secured by an assignment of investment accounts, a deed to his home, and a confession of judgment, guaranteed that Blinder-Robinson would be reimbursed for any amount it had to pay pursuant to its letter of credit in the event the proceeds of the match were insufficient. This agreement also provided that all existing or future indebtedness of the limited partnership to Alzado was subordinated to the amounts he owed to Blinder-Robinson.

A week before the fight, Alzado threatened not to participate because he feared he could lose all his assets. A meeting was held at the Blinder-Robinson office, with Alzado, Tinter, Kauffman, Meyer Blinder (president of Blinder-Robinson), and Greg Campbell (Ali's manager) all present. As a result of the meeting, Alzado agreed to fight.

The proceeds of the match were insufficient to meet all of the obligations. Blinder-Robinson was repaid $65,000 from the proceeds, and subsequently initiated this civil action to recover the remaining $185,-000 from Alzado based on his guaranty.

Alzado pled affirmative defenses of waiver, estoppel, release, and fraud in the inducement, and, additionally, asserted two counterclaims. He first claimed that Blinder-Robinson took an active role in the control and management of Combat Associates and thereby became a general partner liable for the obligations of Combat Associates, including the $100,000 to Alzado for engaging in the boxing match. In his second counterclaim, Alzado alleged that Blinder-Robinson had breached an oral agreement with him not to enforce its rights under the guaranty and to indemnify him against any financial losses in connection with the guaranty and related documents.

Alzado also asserted third-party claims against Kauffman and Tinter. First, he alleged that both Kauffman and Tinter had misrepresented that the guaranty and related documents would not create legal liabilities or financial risk for Alzado, and that the ticket sales for the boxing match were sufficient to cover all the expenses, including the obligation to Blinder-Robinson. For these alleged misrepresentations, he prayed for judgment against Kauffman and Tinter for any amount he might be found to owe to Blinder-Robinson. As to Kauffman alone, Alzado also claimed that, as his agent, Kauffman owed a fiduciary duty to protect him from financial loss, and that Kauffman breached this duty by inducing him to sign the guaranty and related documents.

The jury was instructed as to all of these claims and defenses. It returned a verdict in favor of Blinder-Robinson on its guaranty claim, and judgment was entered for $185,000 plus $36,388 in attorney fees against Alzado. On the counterclaims of Alzado against Blinder-Robinson, the jury held for Alzado and awarded damages to him and against Blinder-Robinson on the first counterclaim in the amount of $92,500 based on its liability as a general partner of Combat Associates for compensation to Alzado for participating in the fight and on the second counterclaim in the amount of $100,000 for its breach of the oral agreement not to enforce the guaranty and to indemnify. On the third-party claims, the

jury held for Alzado and against Kauffman on the deceit and breach of fiduciary duty claims and set damages at $100,000 on each count, and against Tinter on the deceit claim with $100,000 as damages on that count. Judgments were entered accordingly.

### I. Alzado's Appeal

■ Claiming that the guaranty violated § 7–61–117, C.R.S., Alzado contends that the judgment for $185,000 plus attorney fees in favor of Blinder-Robinson on its claim for enforcement of the guaranty must be reversed and that judgment notwithstanding the verdict should be entered in his favor. We disagree.

Section 7–61–117, C.R.S., states in pertinent part:

"A limited partner shall not receive from a general partner or out of partnership property any part of its contribution until . . . all liabilities of the partnership, except liabilities to general partners and limited partners on account of their contribution, have been paid or there remains property of the partnership sufficient to pay them."

There was no violation of the statute here because Blinder-Robinson's contribution to the limited partnership was not secured by partnership funds or guaranteed by a general partner. *See Kramer v. McDonald's System, Inc.*, 77 Ill.2d 323, 33 Ill.Dec. 115, 396 N.E.2d 504 (1979). Alzado was not a partner of Combat Associates, and the guaranty he signed pledged his own and not partnership assets. The guaranty was totally unrelated to the partnership assets available for payment to creditors.

As to the repayment of the $65,000 out of partnership assets, there was no showing that the partnership lacked sufficient other assets to pay the liabilities of the partnership other than the amount owing to Alzado. And, Alzado had agreed that Blinder-Robinson was to be repaid its contribution before payment of his fee or any distribution of net profits.

Therefore, the trial court properly denied Alzado's motion for judgment notwithstanding the verdict on Blinder-Robinson's complaint.

By its verdict for Blinder-Robinson, we must assume that the jury held against Alzado on his affirmative defenses of waiver, estoppel, release, and fraud, and, in effect, decided that Blinder-Robinson had not waived or released its rights under the guaranty or agreed to indemnify Alzado. (Also, see IIB below.)

### II. Blinder-Robinson's Appeal

A. The $92,500 judgment for Alzado on his first counterclaim—holding Blinder-Robinson liable for the partnership debt to Alzado.

Blinder-Robinson contends the trial court erred in denying its motion for judgment notwithstanding the verdict on this counterclaim. It asserts that the assistance it provided did not cause it to lose its status as a limited partner and to become liable, as a general partner, to pay Alzado's $100,000 fee for participating in the fight. We agree.

■ There was no conflict in the evidence regarding the acts of Blinder-Robinson. As agreed, it put up the $250,000 letter of credit to secure Ali's commitment to fight Alzado. Meyer Blinder, its president, was interviewed at several press conferences, both before and after the limited partnership agreement was signed, and he participated in a promotional rally in downtown Denver. Blinder-Robinson gave two parties to promote the fight and volunteered the use of its local office and personnel as a ticket sales outlet. Also, this office was used for the meeting when the dispute with Alzado was resolved.

The evidence also established that no one from Blinder-Robinson had any control over or access to the limited partnership's or the general partner's funds or checking account. And, none of its personnel engaged in any activities concerning hiring or firing of anyone, arranging for the printing, sale (other than as an outlet), or tally of tickets for the match, renting the stadi-

um, negotiating for other fighters to precede the key match between Alzado and Ali, obtaining police protection, or any other matter which constituted the day-to-day control and management of the limited partnership's affairs. All such matters were taken care of by the general partner through Kauffman, Tinter, and Harold Conrad, who was hired by Kauffman to be in charge of the entire production of the fight. Conrad testified that during the course of his duties he had no contact with anyone from Blinder-Robinson.

■ Under this state of the record, the evidence does not support a finding or a jury verdict that Blinder-Robinson took part in the control of the business, that being the requirement for holding a limited partner liable as a general partner. Section 7–61–108, C.R.S. The statute does not impose silence on a limited partner who has a material interest in the success of the partnership, especially when, as here, the general partner sought his help. *Silvola v. Rowlett*, 129 Colo. 522, 272 P.2d 287 (1954). *See also Plasteel Products Corp. v. Helman*, 271 F.2d 354 (1st Cir.1959); *Weil v. Diversified Properties*, 319 F.Supp. 778 (D.C.1970). Accordingly, this counterclaim should not have been submitted to the jury, and the motion for judgment notwithstanding the verdict should have been granted.

B. The $100,000 judgment for Alzado on his second counterclaim—Blinder-Robinson's alleged oral agreement not to enforce its rights under the guaranty and to indemnify Alzado against any loss resulting from the guaranty.

■ The jury was instructed concerning Blinder-Robinson's claim against Alzado for enforcement of the guaranty and Alzado's second counterclaim against Blinder-Robinson regarding a release of that guaranty and indemnification of Alzado. Additionally, instructions were given concerning the affirmative defenses of waiver, estoppel, release, and fraud in the inducement with regard to Blinder-Robinson's claim for enforcement of the guaranty. The jury returned a verdict in favor of Blinder-Robinson on enforcement of the guaranty and in favor of Alzado with regard to a release of the guaranty and indemnification of Alzado.

We agree with Blinder-Robinson that there was no evidence which indicated that anyone from Blinder-Robinson either orally or in writing told Alzado that it would indemnify him against any losses. Therefore, in finding for Alzado on this counterclaim, we must assume that the jury found that Blinder-Robinson waived or released the guaranty.

As to waiver or release, the evidence was in conflict. There was testimony that Meyer Blinder told Alzado that "no one would lose anything," that "he had nothing at risk," that Blinder-Robinson would not "take his house," and that it would help him invest in order to repay Blinder-Robinson for any losses Alzado might incur. These statements were made in response to Alzado's concern that he could lose all his assets. There was testimony to the contrary.

However, as correctly contended by Blinder-Robinson, the verdict and judgment in favor of Alzado on this counterclaim based on waiver or release is totally inconsistent with the verdict and judgment in favor of Blinder-Robinson for the balance owed on the guaranty which rejected the affirmative defenses of waiver and release. To add to the confusion, the jury awarded only $100,000 on this counterclaim, whereas the unpaid balance on the guaranty was $185,000. There is no way to reconcile these verdicts. *Cf. City of Aurora v. Loveless*, 639 P.2d 1061 (Colo.1981).

Blinder-Robinson contends the trial court should have granted its motion for judgment notwithstanding the verdict or for a new trial on this counterclaim. Since the evidence was in conflict, judgment notwithstanding the verdict was properly denied. However, in view of the inconsistency of the two verdicts, the judgments on both the complaint and the second counterclaim must be reversed and these claims must be retried.

### III. Tinter's Appeal

In his complaint and his trial data certificate, Alzado alleged that, in an effort to induce him to sign the guaranty, Tinter represented to Alzado that the guaranty and related documents would not create legal liabilities or financial risk for Alzado, and that the ticket sales for the boxing match were sufficient to cover all the expenses, including the obligation to Blinder-Robinson. For these alleged misrepresentations, Alzado prayed for judgment against Tinter for any amount Alzado should be found to owe to Blinder-Robinson in this lawsuit.

Alzado did not plead a claim for deceit based on nondisclosure or concealment, and the trial court properly declined to submit the case to the jury on that theory. At trial, when all parties had rested, the court concluded that there was sufficient evidence to submit Alzado's claim for deceit based on false representations. It therefore instructed the jury on the elements of liability as set forth in *CJI–Civ.2d* 19:1 (1980), and a verdict was returned for Alzado and against Tinter in the amount of $100,000.

Tinter contends that there was no evidence from which the jury could reasonably have found that all the essential elements of deceit by false representations had been proved, that the claim should not have been submitted to the jury, and that his motion for judgment should have been granted. We agree.

There was nothing in the evidence to show that Alzado, in deciding to sign the guaranty, relied on any representation, much less any false representation, made by Tinter. In fact, Alzado did not mention any statement made by Tinter prior to the signing concerning his boxing fee, ticket sales, or the consequences of his signing the guaranty, and stated that Tinter did not exert any pressure on him to sign. The only evidence of a false representation made by Tinter is the testimony of Ali's manager, Greg Campbell, that "I believe Arnold Tinter told everybody ... 15,000 or 20,000 [tickets had been] sold; I don't re-member." However, this statement does not show that Alzado even heard the statement or that Alzado relied on it. Hence, the judgment cannot stand. *See Willis v. Chase*, 125 Colo. 115, 240 P.2d 912 (1952).

### IV. Kauffman's Appeal

Kauffman joined in Tinter's post-judgment motions. He filed a timely notice of appeal and, *pro se*, a preliminary statement with this court. Thereafter, *pro se*, he moved for and was granted the right to join in the briefs of Tinter.

However, Tinter's briefs apply only to the deceit by false representations claim against Tinter. No attempt is made in Tinter's briefs to analyze whether the evidence pertaining to Kauffman was sufficient to support the jury's verdict against him. And the propriety of the claim, verdict, and judgment against Kauffman alone for breach of fiduciary duty has not been briefed or presented in this appeal.

Accordingly, we regard his appeal as abandoned, and affirm the judgments against him as a matter of law. *See Mauldin v. Lowery*, 127 Colo. 234, 255 P.2d 976 (1953). *See also People ex rel. Miller v. Cavender*, 123 Colo. 175, 226 P.2d 562 (1950) and C.A.R. 38(b).

The two $100,000 judgments against Kauffman on Alzado's third-party claims are affirmed. The $100,000 judgment against Tinter on Alzado's third-party claim and the $92,500 judgment against Blinder-Robinson on Alzado's first counterclaim are reversed, and these claims are dismissed. The judgment for $185,000 plus attorney fees against Alzado on Blinder-Robinson's complaint and the $100,000 judgment against Blinder-Robinson on Alzado's second counterclaim are reversed, and the cause is remanded for a new trial on those claims.

PIERCE and TURSI, JJ., concur.